1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

KEVIN LAWRENCE JONES,

Plaintiff,

v.

SCHNEIDER ELECTRIC USA, INC., et al.,

Defendants.

Case No.  5:24-cv-07347-BLF

**ORDER SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915; AND DENYING PLAINTIFF'S MOTIONS**

[Re:  Dkt. Nos. 18, 19, 21]

Plaintiff Kevin Lawrence Jones ("Plaintiff' OR "Jones") is proceeding in this case *pro se* and *in forma pauperis* ("IFP").  He sues Schneider Electric USA, Inc., Volt Management Corp., and Brandon Puffer for alleged violations of employment and antidiscrimination statutes, as well as for intentional infliction of emotional distress.  The Court previously granted Plaintiff leave to proceed IFP, Dkt. No. 12, and permitted Plaintiff to file a First Amended Complaint, which the Court noted would be screened in due course, Dkt. No. 17.

Before the Court screened the First Amended Complaint, Plaintiff filed a Second Amended Complaint.  Dkt. No. 21 ("SAC").  As with Plaintiff's filing of the First Amended Complaint, *see* Dkt. No. 17, the Court construes Plaintiff's filing of a new complaint as a motion for leave to file an amended pleading, which is again GRANTED in light of the fact that the matter has not yet been served and the Court should freely give leave to amend when justice so requires.  *See* Fed. R. Civ. P. 15(a)(2).  The Court now proceeds to screen Plaintiff's Second Amended Complaint and concludes that it must be dismissed.  If desired, Plaintiff may file a Third Amended Complaint on or before July 17, 2025.

## I.    BACKGROUND

Plaintiff initially filed this action on September 27, 2024 in the United States District Court for the Eastern District of California as a Civil Rights Complaint by a Prisoner.  Dkt. No. 1.  He

simultaneously filed a Motion to Proceed *in Forma Pauperis*. Dkt. No. 2. On October 15, 2024, United States Magistrate Judge Sean C. Riordan issued an order transferring the case to the United States District Court for the Northern District of California, in light of the fact that the claim(s) arose in Alameda County. Dkt. No. 8. The case was transferred on October 22, 2024. Dkt. No. 9. On February 24, 2025, Plaintiff filed a First Amended Complaint, Dkt. No. 13, and a Motion to Compel Arbitration, Dkt. No. 14. His Motion to Proceed *in Forma Pauperis* was granted on February 26, 2025, Dkt. No. 12, and then the action was reassigned to the undersigned on March 11, 2025, Dkt. No. 16.

On March 31, 2025, the Court granted leave to file the First Amended Complaint and noted that it would be screened pursuant to 28 U.S.C. § 1915 in due course. Dkt. No. 17. By that same Order, the Court denied Plaintiff's Motion to Compel Arbitration as premature, since the Court had not yet screened the Complaint. *Id.* at 2. Plaintiff then filed a Motion for Equitable Tolling, Dkt. No. 18, a Motion to Compel Arbitration, Dkt. No. 19, and a Second Amended Complaint, Dkt. No. 21.

The facts as alleged in the Second Amended Complaint are as follows: Plaintiff was previously employed by Defendants Schneider Electric USA, Inc. d/b/a Schneider Electric ("Schneider") and Volt Management Corp. d/b/a Volt Workforce Solutions ("Volt"). SAC ¶ 3. Defendant Brandon Puffer ("Puffer") is or was a Warehouse Manager at Schneider Electric who supervised Plaintiff while Plaintiff was working there as a temporary employee. *Id.* ¶ 6. Plaintiff alleges that, shortly after the start of his shift on the day that he ended up being terminated, Puffer "sent a racist group text . . . to his subordinate employees which targeted African Americans." *Id.* ¶ 12. Plaintiff, who is Black, also asserts that Puffer "made racist, offensive comments to and about" Plaintiff starting on Plaintiff's first day at work for Schneider. *Id.* ¶ 16. For example, Puffer "said to a group of employees that [Plaintiff] was not 'black enough' because of how he conducted himself during his job interview." *Id.* ¶ 17. He also "made [a] racist joke . . . about all African Americans eating watermelon." *Id.* ¶ 19. Puffer made other comments associating Plaintiff with slavery and with gang activity, *id.* ¶¶ 21, 23, used the n-word in front of groups of employees, *id.* ¶ 22, and sent a number of text messages with racial commentary to a work group

chat, *see id.* ¶¶ 25–27.  Plaintiff further alleges that Puffer engaged in racially discriminatory conduct on social media.  *Id.* ¶ 12.  In addition, Puffer allegedly made sexual comments to and about Plaintiff.  *Id.* ¶ 25.

On June 15, 2021, Plaintiff "erroneously sent a text to his coworker Brandon rather than PUFFER (who is also named Brandon) stating that he would be late for work that day."  *Id.* ¶ 30. Shortly thereafter, Puffer terminated Plaintiff, stating that Plaintiff was a "no call/no show."  *Id.* ¶ 31.  In the wake of that termination, Jones's final paycheck from Schneider and Volt was late and did not include all compensation to which he was entitled.  *Id.*  As a result of the foregoing incidents, Plaintiff alleges that he experienced significant emotional distress.  *Id.* ¶ 32.

Plaintiff's Second Amended Complaint asserts six causes of action: (1) race discrimination and harassment in violation of 42 U.S.C. § 1981, SAC at 2; (2) race discrimination in violation of Cal. Gov't Code § 12940 *et seq.*, SAC ¶¶ 33–40; (2) sexual harassment in violation of Cal. Gov't Code § 12940 *et seq.*, SAC ¶¶ 41–48; (3) failure to prevent harassment in violation of Cal. Gov't Code § 12940 *et seq.*, SAC ¶¶ 49–63; (4) failure to timely pay wages upon discharge in violation of Cal. Labor Code §§ 201 and 202, SAC ¶¶ 64–69; and (5) intentional infliction of emotional distress, SAC ¶¶ 70–75.

## II.   LEGAL STANDARD

Plaintiff's SAC must be screened, and must be dismissed if it "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from relief."  28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000).  If the SAC survives the initial screening, the court must "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court."  Fed. R. Civ. P. 4(c)(3); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in such cases.").

## III.   DISCUSSION

Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), so this Court is under "a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a matter.  *Leeson v. Transamerica*

United States District Court
Northern District of California

3

1    *Disability Income Plan*, 671 F.3d 969, 976 n.12 (9th Cir. 2012).  Here, it appears that the Court

2    has "federal question" jurisdiction based upon 28 U.S.C. § 1331, which states: "The district courts

3    shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

4    of the United States."  Under that provision, federal courts have subject matter jurisdiction if a

5    federal claim appears on the face of a plaintiff's complaint.  *Armstrong v. N. Mariana Islands*, 576

6    F.3d 950, 954–55 (9th Cir. 2009)  ("The Court has consistently interpreted jurisdictional statutes

7    with an 'arising under' qualification, including § 1331, as giving the lower federal courts

8    jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-

9    pleaded complaint establishes either that [1] federal law creates the cause of action or that [2] the

10    plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

11    law." (quoting *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and*

12    *Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1100 (9th Cir.

13    2008)) (cleaned up)).  One federal claim appears on the face of Plaintiff's Second Amended

14    Complaint: his first cause of action based on 42 U.S.C. § 1981.  SAC at 2.

15       In order to state a claim for race discrimination under 42 U.S.C. § 1981, Plaintiff must

16    allege that "(1) he is a member of a racial group, (2) some contractual right with defendant was

17    impaired, (3) defendant intentionally discriminated against him based on race, and (4) his race was

18    a but-for cause of the contractual impairment."  *Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277,

19    1279 (C.D. Cal. 2024) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S.

20    327, 341 (2020)).  The Court understands Plaintiff to base this claim on the termination of his

21    employment by Puffer.  Although Plaintiff adequately states facts going to the first three elements

22    of this claim, the allegations in Plaintiff's Second Amended Complaint undermine his showing on

23    the fourth element of the claim.  "Under th[e] [but-for causation] standard, a plaintiff must

24    demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have

25    occurred."  *Comcast Corp.*, 589 U.S. at 331.  Here, however, Plaintiff specifically alleges that he

26    was late to work on the day on which he was terminated, that he accidentally failed to notify his

27    supervisor that he was running late, and that his supervisor then terminated him based upon his

28    unexcused absence. SAC ¶¶ 30–31.  Thus, Plaintiff's Second Amended Complaint alleges that

1   there was a reason for his termination separate and apart from Puffer's alleged race discrimination,

2   which means that the race discrimination was not the but-for cause of the contractual impairment

3   (i.e., the termination).

4          In the absence of Plaintiff's section 1981 claim, there are no other claims over which the

5   Court has original jurisdiction.  This is not a case in which there is federal subject matter

6   jurisdiction based on "diversity of citizenship."  Under 28 U.S.C. § 1332, this Court has

7   jurisdiction if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

8   and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  The party

9   asserting diversity jurisdiction bears the burden of proof that such jurisdiction exists, though, so

10  Plaintiff's "failure to specify [his] state citizenship [is] fatal" to any attempted assertion of federal

11  diversity jurisdiction.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857–58 (9th Cir. 2001).

12  Moreover, this basis for jurisdiction requires "complete diversity," meaning that "the citizenship

13  of each plaintiff is diverse from the citizenship of each defendant."  *Caterpillar Inc. v. Lewis*, 519

14  U.S. 61, 68 (1996).  Presuming that Plaintiff's domicile is California, complete diversity does not

15  exist here: the state of citizenship for a business entity is based on the entity's state of

16  incorporation and/or principal place of business, *see* 28 U.S.C. § 1332(c)(1), and Plaintiff here

17  specifically alleges that Defendant Volt is headquartered in California.  SAC ¶ 11.

18         If a district court "has dismissed all claims over which it has original jurisdiction," it may

19  "decline to exercise supplemental jurisdiction over" other claims.  28 U.S.C. § 1367(c)(3); *see*

20  *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021).  "[I]n the usual case in which all federal-law

21  claims are eliminated before trial, the balance of factors to be considered under the [*United Mine*

22  *Workers of Am. v. Gibbs*, 383 U.S. 715 (1966),] doctrine—judicial economy, convenience,

23  fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-

24  law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Accordingly, the

25  Court declines to exercise supplemental jurisdiction over Plaintiff's five state-law claims in the

26  absence of a valid federal claim.

27         Although there is only a "low threshold for proceeding past the screening stage," *Wilhelm*

28  *v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012), the Court determines that that threshold is not

met in this case.  Thus, the Court concludes that Plaintiff's Second Amended Complaint must be DISMISSED WITH LEAVE TO AMEND.  If desired, Plaintiff may file a Third Amended Complaint on or before July 17, 2025.

**IV.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that, pursuant to the Court's screening required under 28 U.S.C. § 1915, Plaintiff's Second Amended Complaint is DISMISSED WITH LEAVE TO AMEND for failure to state a claim.  Plaintiff may file a Third Amended Complaint on or before July 17, 2025.  The Court will not order service of process by the United States Marshals Service unless Plaintiff states a viable federal claim.

Because Plaintiff's operative complaint has been dismissed, Plaintiff's Motion to Compel Arbitration (Dkt. No. 19) and Motion for Equitable Tolling (Dkt. No. 18) are both DENIED AS MOOT WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated:  June 17, 2025

_____
BETH LABSON FREEMAN
United States District Judge